## Appeal of WOOD BROTHERS THRESHER CO.

Docket No. 5877.   Submitted February 9, 1926.   Decided April 22, 1926.

*K. N. Parkinson, Esq.*, for the taxpayer.
*George G. Witter, Esq.*, for the Commissioner.

Before PHILLIPS and TRAMMELL.

This is an appeal from determinations of deficiencies in income and profits taxes for the calendar years 1918, 1919, and 1920, in the respective amounts of $512.39, $3,276.16, and $2,333.97, a total of $6,122.52. The taxpayer alleges error on the part of the Commissioner in (1) excluding from invested capital alleged value of good will acquired for stock; (2) excluding from invested capital $75,000, claimed to have been paid in in cash for patents; (3) refusing to allow as a deduction any exhaustion of the alleged purchase price of such patents; and (4) refusing to allow as a deduction an amount of $2,500, claimed to have been paid as brokerage commissions.

### FINDINGS OF FACT.

The taxpayer is an Iowa corporation with its principal office at Des Moines. It was incorporated January 6, 1911, with an authorized capital stock of $600,000, of which $200,000 was preferred stock and $400,000 was common stock.

Upon its organization it issued $225,000 par value of its stock in exchange for tangible assets of a predecessor business having a fair market value of $206,772.51 in excess of liabilities assumed. As a part of such exchange it acquired the good will of such predecessor, which had a fair market value of $18,227.49.

On February 1, 1911, the taxpayer borrowed from two banks the amounts of $35,000 and $40,000, a total of $75,000. At a meeting held on the same date the stockholders approved the purchase from F. J. Wood of three United States patents and two applications for

patents, for the sum of $75,000. The purchase was accomplished, payment was made to Wood, and the transaction recorded in the taxpayer's cash book. Within two or three days thereafter, F. J. Wood purchased for cash 750 shares of the capital stock of the taxpayer at par value of $100 per share, and the taxpayer thereupon repaid to the banks the amount of $75,000 which it had borrowed.

Half of the stock so purchased by F. J. Wood was issued to him and half to his brother, R. L. Wood. The stock then outstanding was held as follows:

|  | Shares |
|---|---|
| F. J. Wood | 1,489 |
| R. L. Wood | 1,489 |
| E. E. Wood | 11 |
| R. J. Wood | 11 |

During 1911, 23 shares were sold to other individuals at par.

The patents and applications for patents which the taxpayer acquired from F. J. Wood in 1911 were as follows:

United States Patent No. 710,028, being an improvement in Tenders for Traction Engines, issued to Franz J. Wood, September 30, 1902;

United States Patent No. 818,009, being an improvement in Threshing Machines, issued to Franz J. Wood, April 17, 1906;

United States Patent No. 978,977, being an improvement in Driving Gear for Traction Engines, issued to Franz J. Wood, December 20, 1910;

Application for United States Letters Patent, Serial Number 499,301, being an improvement in Band Cutter and Feeder for Threshing Machines, filed by Franz J. Wood, June 1, 1909; and

Application for United States Letters Patent, Serial Number 602,151, being an improvement on Traction Engines with special reference to Gas Tractors, filed by Franz J. Wood, January 12, 1911.

The devices described under these patents and under application No. 499,301 had been manufactured by the predecessor company, but no royalties were ever paid to the owner of them.

Under Patent No. 710,028, dated September 30, 1902, about 100 machines had been manufactured by the predecessor company and sold for $100 each. The manufacture of these machines was discontinued about 1907 and none have ever been made by the taxpayer.

The grain-threshing machine covered by Patent No. 818,009, dated April 17, 1906, has been manufactured both by the taxpayer and its predecessor. During the four years prior to 1911 about 100 of the threshers had been manufactured and sold at from $800 to $1,200 each. In the year 1923 the taxpayer manufactured between 700 and 1,000 of the machines. At the time of transfer and on March 1, 1913, such patent had a fair market value of $25,000.

Under Patent No. 978,977, dated December 20, 1910, the taxpayer's predecessor manufactured two engines in 1910 and the taxpayer built six in 1911. The taxpayer was unable to sell these engines at a profit and discontinued manufacturing them in 1911. At the time

this patent was secured it was considered by the inventor to be a valuable patent, but shortly thereafter the market for the patented device ceased.

The device described under application for Letters Patent No. 499,301 was manufactured by the predecessor company and is still manufactured by the taxpayer with some improvements.

Under application No. 602,151 the taxpayer made one tractor, which did not prove satisfactory, and the manufacture of the machine was discontinued.

During 1918 a Chicago brokerage firm discounted notes of the taxpayer on which commissions, discounts, and exchange charged during the year amounted to $4,766.02. Of this amount the taxpayer paid $2,266.02, leaving $2,500 of the total charges for the year unpaid. There is no evidence as to the time such notes were to run or as to what amount of interest accrued during the year.

In determining the deficiency, the Commissioner refused to include in invested capital any value for good will or for the patents, and refused to allow any deduction for exhaustion of the patents.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*